UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    **Plaintiff,**<br><br>V.<br><br>TAVIE TERRELL SMITH,<br>    **Defendant.** | CRIMINAL NO. 5:20-74-KKC-MAS-9<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Tavie Terrell Smith's construed motion (DE 125) to revoke the magistrate judge's detention order. Because Smith has not overcome the presumption of detention and the factors outlined in 18 U.S.C. § 3142 all weigh in favor of detaining Smith pretrial, his motion will be denied.

I.

On November 23, 2020, a criminal complaint was filed against Smith charging him with one count each of conspiracy to possess fentanyl and cocaine with distributive intent, in violation of 21 U.S.C. § 841(a)(1). (DE 1). The government moved that he be detained pending trial. Pursuant to 18 U.S.C. § 3142(e)(1), a defendant must be detained pending trial if, after a hearing, a judicial officer finds that no condition or combination of conditions will reasonably assure his appearance at future court proceedings and the public safety.

The magistrate judge conducted a detention hearing and determined that the government had proved by a preponderance of the evidence that there were no conditions or combination of conditions that would assure Smith's appearance at future court proceedings. (DE 16). The magistrate judge also concluded that the government had presented clear and convincing evidence that Smith poses a danger to the community. (*Id.*) Accordingly, the magistrate judge

ordered that Smith be detained pending trial. Smith then filed this motion (DE 125), asking the Court to revoke the magistrate judge's detention order.

The Court will conduct a *de novo* review of the magistrate judge's detention order. The statute providing for review of the magistrate judge's detention order does not specifically require that the Court conduct an additional hearing. 18 U.S.C. § 3145(b). In his motion, Smith does not request a hearing, and he does not rely on or explain evidence not already in the record that he would proffer at a hearing in support of the motion to revoke the detention order. Accordingly, a second detention hearing is not necessary. *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *United States v.* Jones, No. 12:CR-105, 2012 WL 6737784, at * 1, n.1 (D. Conn. 2012); *United States v. Burks*, 141 F. Supp. 2d 1283, 1285 (D. Kan. 2001);*United States v. Alonso*, 832 F. Supp. 503, 504 (D. Puerto Rico 1993); *United States v. Bergner*, 800 F. Supp. 659, 661 (N.D. Ind. 1992).

At the time of the detention hearing and the magistrate judge's detention order, the only charge against Smith was contained in the criminal complaint for conspiracy to possess fentanyl and cocaine with distributive intent. But shortly after the magistrate judge issued the detention order, the government filed a superseding indictment in this matter. This charged Smith with four counts, which include: (1) conspiracy to distribute 400 grams or more of fentanyl, Count 1; (2) possession with intent to distribute 400 grams or more of fentanyl, Count 7; (3) possession with intent to distribute 500 grams or more of cocaine, Count 8; and (4) possession of a firearm in furtherance of a drug trafficking crime, Count 9. (DE 106).

In resolving this motion, the Court will rely on the affidavit filed in support of the criminal complaint, the superseding indictment, the Pretrial Services Report prepared by the United States Probation Office, the audio recording of the detention hearing, and the response filed by the United States following the detention hearing (DE 135).

## II.

Pursuant to the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, a defendant may be held pending the resolution of his case only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The United States must prove that no conditions of release can ensure the safety of the community and the defendant's appearance in court. *Id.* It must demonstrate the defendant's risk of non-appearance based on a preponderance of the evidence and demonstrate that he presents a danger to others and the community by clear and convincing evidence. *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985); *United States v. Curry,* 2006 U.S. Dist. LEXIS 49661, at *16 (E.D. Ky. 2006).

In certain cases, the default position of release pending trial is modified in favor of detention pending trial. *Stone*, 608 F.3d at 945. There is a rebuttable presumption in favor of detention if there is probable cause to believe that the defendant committed one of the crimes listed in 18 U.S.C. § 3142(e)(3). A grand jury indictment will satisfy the probable cause requirement. *See Hazime*, 762 F.2d at 37. The defendant bears the "burden of production" to overcome the presumption, but the United States retains the "burden of persuasion" in proving that the defendant should be detained pending trial. 18 U.S.C. § 3142(e)(3); *Stone*, 608 F.3d at 945.

A defendant must come forward with some evidence to indicate that he is not a danger to the community and does not present a risk of non-appearance. *Stone*, 608 F.3d at 945 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Producing evidence that the defendant is not a danger to the community, or a flight risk, does not alone overcome the

3

presumption in favor of detention, as it is merely a factor for the Court to weigh in deciding whether the defendant should be detained pending trial. *Id.*

Regardless of whether a presumption in favor of detention applies to a particular defendant, the government must prove that no conditions of release can ensure the safety of the community or the defendant's appearance in future court proceedings. *Id.* Section 3142(g) delineates factors for courts to consider in order to determine whether the Government has satisfied this burden of persuasion:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). A court's consideration of these factors should not be construed to modify or limit the defendant's presumption of innocence. *Stone,* 608 F.3d at 946; 18 U.S.C. § 3142(j). With this legal framework in mind, the Court considers Smith's request that he be released pending trial. As an initial matter, however, the Court will find that the Government has satisfied its burden to show probable cause that Smith committed one of the crimes listed in 18 U.S.C. § 3142(e)(3).

This is a presumption case because Smith is charged with crimes found under the

Controlled Substances Act for which there is a mandatory minimum of 15 years based on the 10-year statutory minimum as to Counts 1 and 7 in the indictment, and the 5-year consecutive sentence as to Count 9. (DE 106). Because of this presumption, the burden shifts to Smith to offer rebuttal evidence.

This Court, like Judge Stinnett, finds that Smith has adequately rebutted the presumption in favor of detention as to his flight risk. Smith does not possess a valid passport and has only travelled outside of the United States, once, as a child. He has resided with his father in Detroit, Michigan, since his childhood, and his daughter also lives in Detroit. He maintains an "excellent" relationship with his father, according to the pretrial services report, and if released, seeks to reside with him in the Eastern District of Michigan. He is willing to submit to GPS monitoring or any other conditions the Court would deem appropriate, to further mitigate the risk of flight. Thus, in consideration of these factors, the Court finds that Smith's relationship to Detroit and the ties he holds there, overcome his initial burden of production that he is not a flight risk.

Notwithstanding this finding, Judge Stinnett later found that the United States had met the burden of persuasion. As interpreted by Smith, the Court cited to

> (1) Mr. Smith's alleged use of multiple social security numbers; (2) an alleged failure to appear for a court appearance on a misdemeanor marijuana charge; (3) the alleged statement of a cooperating defendant that Mr. Smith travelled between Detroit and Lexington; (4) mail items found at a Lexington address; and (5) Mr. Smith's unemployment.

(DE 125, ¶ 2; *See* DE 16 at 4-5). The Court will note, however, that Judge Stinnett did not address the failure to appear charge as a ground for flight-based detention. Therefore, because it was not relied upon as a detention factor, the Court will not address it.

Smith says that all of the "items" cited by the Court do not "individually or collectively" hold any weight in proving that Smith is a risk of flight. (*Id.*) In his motion, he attempts to

5

explain each of them.

> First, as to the use of different social security numbers, the numbers used were substantially similar … indicat[ing] that any use of the numbers was the result of a mistake rather than as part of an attempt to deceive. … The statement of the cooperating defendant is suspect due to her incentive to attempt to obtain a reduced sentence by making statements that she believes could be viewed favorably by the United States. The mail matter located in Lexington does not necessarily indicate that Mr. Smith had made Lexington his permanent residence. Finally, Mr. Smith's unemployment is certainly not unusual in view of the current economic situation which exists as a result of the ongoing pandemic.

(*Id.*, ¶¶ 2-3). Smith argues the United States did not meet its burden of proving that he is a flight risk by a preponderance of the evidence. The Court, however, is not convinced by these explanations.

While Smith's use of multiple social security numbers may have been the product of mistake, rather than an intent to deceive, the Court cannot discount the testimony offered by DEA Task Force Officer, Thomas Clements, over an unsubstantiated conjecture. Officer Clements revealed that there were at least three different instances where Smith had used different social security numbers when interacting with law enforcement officers. From this, Judge Stinnett opined that at least "seemingly" it appeared that Smith was attempting to "obscure" his identity from the officers; thus, it gave Judge Stinnett "significant pause" regarding Smith's ability to be truthful when dealing with law enforcement. (DE 16 at 5, 8). In view of this evidence, the Court agrees with Judge Stinnett's sentiment. The Court will observe that, while Smith attributes the production of different social security numbers to a "mistake" there is no evidence that Smith ever showed signs of regret or explained them as "mistakes" in his interactions with law enforcement.

Smith also asks this Court to disregard his co-defendant Michelle Jones' statement, regarding Smith's frequent travel to and from Detroit and Lexington, for purposes of supplying

his drug trafficking organization's stockpile for drug distribution. But Judge Stinnett did not solely rely on Jones' statement; instead, he found there was enough evidence in the record to verify that statement. He credited Officer Clements' testimony regarding the significant amount of fentanyl that the organization was moving to Lexington from Detroit—roughly 200 to 300 grams—every few days. Additionally, two confidential sources identified Smith as one of the individuals that was responsible for bringing the large quantities of fentanyl to Lexington. There is thus enough evidence in the record to support the finding that Smith is risk of flight or nonappearance at future hearings.

Smith further argues that, just because mail matter was discovered in a house in Lexington, it does not "necessarily" prove that Lexington is his permanent residence. Officer Clements testified that a search warrant of a residence in Lexington revealed mail matter and personal items dedicated to Smith, indicating, perhaps, that he was living at that address. In any case, whether or not that home was being used permanently or temporarily by Smith, does not circumvent the evidence that connects Smith to that residence. Smith's aunt previously told a United States probation officer that Smith had been living in Lexington for six months prior to his arrest. Later, a search incident to arrest would reveal that Smith had a key (on his person) to the same residence where the mail matter was found. And a pill bottle belonging to Smith was found there (*see* DE 135 at 7). Moreover, multiple physical surveillance footage displays Smith entering and leaving the residence, and a controlled purchase of fentanyl (captured via video) took place inside that residence.

Finally, Smith claims that his unemployment should not be considered in weighing his risk of flight or nonappearance given the ongoing pandemic. However, the United States noted that Smith has remained unemployed since March 2019; Judge Stinnett recognized this as part of his analysis.

The Court now turns to the factors of 18 U.S.C. § 3142(g) to determine whether the Government has met its burden of persuasion.

First, the nature and circumstances of the offense charged weigh in favor of denying the motion to revoke the detention order because Smith's charges stem from trafficking in controlled substances, specifically fentanyl and cocaine. 18 U.S.C. § 3142(g)(1). Officer Clements' testimony further substantiated the government's claims of Smith's dangerousness, noting that he was moving 200 to 300 grams of fentanyl from Detroit to Lexington, on behalf of his drug trafficking organization every few days. In addition, a search of his residence revealed over one thousand grams of fentanyl, several hundred grams of cocaine, thousands of dollars in cash, and two firearms—one of which was an AR-15 rifle with a 100-round drum magazine attached. Accordingly, the nature and circumstances of the offense charged weigh in favor of detention.

Next, the "weight of the evidence" against Smith favors detention. *See* 18 U.S.C. § 3142(g)(2). This factor relates to the weight of the evidence of a defendant's dangerousness, not the weight of evidence of his guilt. *Stone*, 608 F.3d at 948. In this case, based upon the facts detailed in the affidavit to the Complaint, the testimony at the detention hearing from Officer Clements related to fentanyl trafficking and firearms, and the charges in the superseding indictment, this factor weighs heavily in favor of detention.

The history and characteristics of the defendant also weigh in favor of detention. 18 U.S.C. § 3142(g)(3). While Judge Stinnett found that "Smith has no significant criminal history prior to the instant offense" (DE 16 at 8), he still found some personal aspects of Smith was troubling; particularly, his state of unemployment since March 2019, his inability to be truthful with law enforcement regarding the use of three social security numbers, his attempt to disclaim all connection the subject residence in Lexington. The Court will note that, simply because Smith has no criminal history, does not necessarily mean that he is not a danger to the

community. A lack of criminal history does not mandate release. *See United States v. Music*, 2007 U.S. Dist. LEXIS 51557, *5 (W.D. Ky. July 16, 2007).

As to the final factor, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 U.S.C. § 3142(g)(4). "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 939 n. 1 (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")). Smith urges the Court to reconsider his denial of release, since his other co-defendants have been released on conditions. However, for purposes of this Order, the Court concerns itself only with specific details relevant to Smith, and not that of his co-defendants. As previously noted, Officer Clements testified some concerning details regarding Smith's extensive travel to and from Lexington from Detroit for purposes of drug trafficking. Judge Stinnett outlined the heightened importance of protecting the safety and welfare of the community from drug abuse. This factor weighs in favor of detention.

Finally, while Smith expresses fear of contracting the novel coronavirus while incarcerated at the Woodford County Jail, the Court reminds Smith that inmates around the country are in the same position and that he is not alone in his plight. Smith is a 32-year-old male, described to be in "excellent physical health" in his pretrial services report. He is not prescribed any medications and he has not suffered any major medical problems.

### III.

In summary, considering all the factors set forth in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that there are no conditions that would reasonably assure Smith's appearance if he were released. Considering the same factors, the Court finds by clear and convincing evidence that there are no conditions that could reasonably assure the safety of

the public.

Accordingly, the Court hereby ORDERS that Smith's construed motion to revoke the magistrate judge's detention order (DE 125) is DENIED. Smith SHALL remain in custody pending trial.

Dated January 15, 2021

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY